A89A0125. THOMPSON v. THE STATE.
(383 SE2d 339)

BENHAM, Judge.

Appellant was convicted of rape, aggravated sodomy, and burglary. He appeals from the denial of his motion for new trial, raising three enumerations of error. We affirm the judgment of the trial court.

1. Appellant complains that he was denied effective assistance of counsel during his trial. He contends that his trial attorney did not consult with him about jury selection and that the attorney presented a character witness whose testimony led to the introduction of unfavorable evidence. " ' "To establish that there has been actual ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that the deficiency prejudiced the defense. In order to prove the defense has been prejudiced, defendant must show there is a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional deficiencies. [Cits.]" ' 'The complaining defendant must make both showings. His failure "to establish either the performance or the prejudice component results in denial of his Sixth Amendment claim." [Cit.] A reviewing court need not "address both components if the defendant makes an insufficient showing on one," (cit.), nor must the components be addressed in any particular order. (Cit.)' " *Prophitt v. State*, 191 Ga. App. 5 (2) (381 SE2d 83) (1989).

" ' "The decisions on which witnesses to call . . . what jurors to accept or strike . . . and all other strategies and tactical decisions are the exclusive province of the lawyer after consultation with his client." ' [Cits.]" *Austin v. Carter*, 248 Ga. 775, 779 (285 SE2d 542) (1982). At the hearing on the motion for new trial, appellant testified that his trial counsel did confer with him during jury selection; that there were five persons appellant wanted to retain on the jury and the only reason he wanted to do so was because they were black; and that there were at least four black jurors on appellant's jury. Appellant's trial counsel testified that during the voir dire he conferred with ap-

pellant; that there was one specific juror on which they disagreed; and that appellant said he would defer to counsel's decision. Under these facts, appellant failed to satisfy the first component of the test, i.e., he failed to show that counsel's performance was deficient.

Regarding the character witness, the trial counsel testified that it was appellant who informed him about the witness, who was appellant's employer. The trial counsel, a veteran of over 100 criminal trials, characterized the witness as "[not] just your run of the mill employer. . . . [He] was a fellow who presented himself in court in a suit and tie, he was articulate, he was believable, and he was sold on Solomon Thompson. . . . [H]e probably may have been our only witness that, in my opinion, could be believable or was believable. . . . He thought that [appellant's] character was excellent. The tradeoff was to be prepared to have introduced [appellant's] prior [conviction] record which, according to our investigation, was . . . several years old [and for] . . . relatively . . . minor crime. And I thought that the tradeoff would work in his favor." The attorney further testified that he discussed facts of the previous convictions with appellant, and that he was surprised at trial during appellant's cross-examination "by some facts that he had not told me about one of them that related it, in fact . . . to the matter for which he was on trial. . . ." Again, the evidence adduced at the hearing failed to show a deficiency in the trial counsel's performance. The trial court did not err in rejecting appellant's claim of ineffective assistance of counsel. *Gabler v. State*, 177 Ga. App. 3 (2) (338 SE2d 469) (1985).

2. Appellant complains that statements he gave on August 3, 1987, before he was arrested, should have been suppressed because he had not been given his *Miranda* rights. We find no error in the trial court's decision not to suppress the statement. The testimony given at the hearing on this matter shows that on the afternoon in question, detectives went to appellant's home to question him about the crimes. He was advised that he was not under arrest and that he did not have to make any statements at that time. He agreed to answer questions. The detectives asked him whether he had been to a particular block on a particular street or knew anyone who lived in that vicinity; whether he knew the victim or her roommate; and whether there was any reason for his fingerprint to have been at that residence. Appellant answered all of the questions in the negative, and the interview was concluded. The detectives left appellant's home and the area, but returned later that day to arrest appellant. He was given his *Miranda* warnings at that time.

"For *Miranda* to apply a person must be taken into custody or otherwise deprived of his freedom of action in any significant way. [Cits.] . . . [T]here is no indication that the defendant had been taken into custody or otherwise deprived of his freedom of action in

any significant way by action of the officers when he made [the statement in question]. The defendant's statement was admissible as a statement made prior to any in-custody interrogation. [Cit.]" *Hardeman v. State*, 252 Ga. 286, 288 (313 SE2d 95) (1984).

3. In his final enumeration of error, appellant contends that a videotape of a statement he made to detectives after his arrest should not have been shown to the jury because it constituted an illegal invasion of privacy under OCGA § 16-11-62 (2). That statute states that it shall be unlawful for "[a]ny person, through the use of any instrument or apparatus, without the consent of all persons observed, to observe, photograph, or record the activities of another which occur in any private place and out of public view; provided however, that it shall not be unlawful to use any camera, photographic equipment, videotape equipment, or other devices to observe, photograph, or record the activities of persons incarcerated in any jail, correctional institution, or any other facility in which persons who are charged with or who have been convicted of the commission of a crime are incarcerated, provided that such equipment shall not be used while the prisoner is discussing his case with his attorney. . . ." The record shows that before the custodial interrogation at the police station began, the interviewing detective placed a tape recorder in front of appellant and asked him whether he minded if the detective taped the interview, and appellant said that he did not. Neither party specified whether the method of recording would be videotaping. It could be argued that appellant consented to the use of "any instrument or apparatus . . . to record" the conversation. However, assuming that he did not consent, the statute was not violated, since it does not prohibit a party to a conversation from secretly recording or transmitting the conversation without the knowledge or consent of the other party. *State v. Birge*, 240 Ga. 501 (241 SE2d 213) (1978). Moreover, the police station is not a "private place" within the meaning of the statute. See OCGA § 16-11-60 (2). Since the interrogation was being conducted in a public place and recorded at the behest of one of the parties to the conversation, the interrogating detective, the trial court did not err in allowing the videotape to be admitted into evidence and viewed by the jury.

*Judgment affirmed. Deen, P. J., and Birdsong, J., concur.*

DECIDED MAY 31, 1989 —
REHEARING DENIED JUNE 20, 1989 —

*Mark J. Nathan*, for appellant.
*Spencer Lawton, Jr., District Attorney, David T. Lock, Assistant*

*District Attorney*, for appellee.